Dempsey *v*. State.

[99 So. 5. No. 23528.]

(Division A. Feb. 18, 1924.)

Counties. *In prosecution of supervisor for letting contract to relative, state must prove relative not lowest responsible bidder.*

In a prosecution, under chapter 278, Laws 1922, of a member of the board of supervisors for knowingly voting to let a contract to one of his relatives on competitive bids therefor, the state must prove that such relative was not the lowest responsible bidder.

Appeal from circuit court of Winston county.
Hon. T. L. Lamb, Judge.

W. E. Dempsey was convicted of an offense, and he appeals. Reversed and defendant discharged.

*L. H. Hopkins, H. H. Rodgers* and *Flowers & Brown,* for appellant.

Appellant who was a member of the board of supervisors of Winston county was indicted for nepotism under chapter 278 of the Laws of 1922. The limitation of the act expressly exempts from the operation thereof any act of a member of a board of supervisors in letting a contract on sealed bids in a competitive manner.

It was incumbent upon the members of the board of supervisors not only to decide who filed the lowest bid but who was the lowest responsible bidder. In this the board necessarily acted in its capacity as a judicial tribunal. The determination of the responsibility of the bidder was a judicial act. This question is left to the sound discretion of the board. A person might file the lowest bid and yet not be responsible. The law under which this appellant was indicted expressly provides that it shall not apply to contracts where the same are let to the lowest responsible bidder on competitive bids. Yet there is not one line of testimony in this record to sustain the charge that J. Y. Dempsey was not the lowest responsible bidder for the contract.

Since the state failed to show that the appellant's son was not the lowest responsible bidder for the contract, it failed to make out a case under this statute and the peremptory instruction requested for the defendant should have been given. The question of responsibility, at least in so far as contracts of this particular nature are concerned, is one of prime importance.

. We therefore take issue with the state's only witness, a member of the board of supervisors, who seemed to think and to have the idea that the only thing for the board to consider was the lowest bid filed. This seems to have been the theory of the state. It is all the state proved. Under the law, and under this indictment this appellant should not have been convicted in the absence

of such a showing. The mere fact that the indictment charges that these. men were responsible bidders does not make them such. It was incumbent upon the state to prove that they were, and this burden has not been met. There is not one syllable of evidence in the record to support this allegation.

The board was not acting in a ministerial capacity, but in a judicial capacity. And in the exercise of this discretion the members of the board are not liable for any mistake made by them while acting in good faith, and not through corrupt or fraudulent motives. This was expressly decided by this court in the case of *Bank of McCool* v. *U. S. F. & G. Company et al.*, 128 Miss. 828, 91 So. 566. See, also, the case of *Pearl River Board* v. *Town of Picayune*, 126 Miss. 473, 89 So. 9.

*S. C. Broom,* Assistant Attorney-General, for the state.

This case comes up under chapter 278 of the Laws of 1922, being "An act to forbid nepotism by boards of supervisors, and to provide a penalty therefor." It might be of interest to briefly review the history of the law of nepotism in the state of Mississippi, as contained in sections 109 and 210, of the Constitution of Mississippi, section 7350, Hemingway's Code, section 6606, Hemingway's Code.

Chapter 230, Laws of 1922, amending section 1038, Hemingway's Code, enacts into statute law the provisions of section 109 of the Constitution prohibiting any officer being interested directly or indirectly in any contract made with such branch of the government, or its various subdivisions with which he may be connected.

Taking into consideration the several constitutional and statutory provisions quoted, as well as other provisions of our organic and statutory law, it has manifestly been the purpose of our Constitution makers, and the legislature to condemn and prohibit any manner or form of interest in contracts by which pecuniary gain

would result even remotely to persons connected with the administration of public affairs on the theory that it is against public policy and inimical to the public good, and this has been the prevailing idea in Mississippi from the beginning of time, and is not a new or original thought with us, but the same idea and belief prevailed when Henry Hart Milman, the great English writer, said "From nepotism Alexander V was safe, for he was without kindred or relatives."

The case of *Barton* v. *Alexander,* 148 Pac. 471, 27 Idaho 286, is perhaps the leading case on the law of nepotism as applied to this particular case. We submit that this indictment charges every essential element of crime under the statute, and at the same time negatives every necessary exception, and the demurrer was very properly overruled.

*Flowers & Brown,* for appellant, in response to questions from the court.

Under what statute was the contract in question let by competitive bidding? Section 3566, Code of 1906 (section 6183, Hemingway's Code); Section 361 of the Code of 1906 (section 3734 of Hemingway's Code).

The board is by the former section given complete jurisdiction and control over the paupers of the county, and may purchase the necessary supplies, etc., to take care of them. And may employ a superintendent or person to take care of the poorhouse. The latter section requires that all contracts for any public work, where the amount exceeds the sum of fifty dollars shall be on sealed bids and let to the lowest bidder.

"Public work is every species and character of work done for the public, and for which the tax paying citizens are liable." 32 Cyc. 1256. In the second interrogatory propounded, it is asked if sections 3566, *et seq.,*

contemplate that the board shall obtain a superintendent for the county poorhouse by competitive bidding.

We cannot say that the section in question (3566) contemplates that a superintendent, as such, shall be employed by competitive bidding. The law does not prescribe the exact method by which this jurisdiction and power may be exercised. This is left with the board. It may employ a superintendent at a stated salary and then furnish supplies, medicines, nurses and physicians as needed and thus take care of the situation. Or the board may, as was done in the case at bar, enter into a contract with some responsible person to take the contract to furnish the supplies and support the paupers at so much *per capita.* The board can pursue this latter course because the act in question gives them "jurisdiction and power necessary and proper" over the subject.

The third question propounded by the court is whether the language "However, this act shall not apply," etc., of section 1, chapter 278, Laws of 1922, applies to contracts not authorized or required by some other statute to be let by competitive bidding.

We have shown that the board has jurisdiction and power to let the contract, and we have shown further that under section 361 it could not be let except on competitive bids, hence the contract was "required by some other statute to be let by competitive bidding."

Furthermore, chapter 278 of the Laws of 1922, is a penal statute and must be construed strictly. It matters not that the contract is let in that manner because required by some other statute, or that it was so let because the board deemed it best. All that the act requires to exempt a particular action from the penalties thereby provided is that the contract be let on competitive bids.

*S. C. Broom,* Assistant Attorney-General for the state, in response to questions of the court.

We adopt the views of counsel for appellant with reference to the first and second interrogatories propounded, but take issue on the third proposition, to-wit: the construction of section 1, chapter 278, Laws of 1922.

Our construction of the statute is that it is nepotism within the meaning of this act, and condemned by this act in every instance where any member of the board of supervisors of any county shall knowingly vote, to let any contract to, or for the employment by contract or otherwise of any relative of any member of the board of supervisors by blood or marriage, within the third degree, etc., except in the case of competitive bids, if it should develop that such relative was the lowest responsible bidder. Under all other circumstances, whether it be a case for competitive bids or otherwise, it would be nepotism within the meaning of this statute.

The construction placed upon it by counsel for appellant is that this entire act has no application to such contract let to competitive bidders. In other words, they would construe this act to mean that it was only intended to cover such cases where the amount involved was less than fifty dollars, when the supervisors would be authorized to let such contract without first submitting it for competitive bids. This construction we submit is in the nature of "straining at gnats and swallowing camels."

It would be necessary to cut out the phrase "To the lowest responsible bidder" to make the statute susceptible to the construction placed upon it by the appellant, whereupon it would read as follows: "However, this act shall not apply to work or labor, or the furnishing of supplies or materials where the same is let on competitive bids."

Surely this proposition is plainly stated. It is always nepotism to let a contract to a relative within the third degree unless he is one of competitive bidders, and he is the lowest responsible bidder. The reason for this pro-

viso is not hard to discover. The necessity for the act forbidding nepotism has long been recognized, and the purpose of this act was to correct that evil. But there was no evil, and it is not nepotism within the meaning of the act if as a matter of fact the relative gets no preference by reason of his relationship.

Argued orally by *J. N. Flowers,* for appellant, and *S. C. Broom,* Assistant Attorney-General, for the state.

SMITH, C. J., delivered the opinion of the court.

The appellant is or was a member of the board of supervisors of Winston county, and was convicted of knowingly voting to award a ''contract for keeping the paupers'' of the county to his son, J. Y. Dempsey, who, the indictment alleges, ''was not the lowest responsible bidder'' for said contract. Section 1, chapter 278, Laws of 1922, provides: ''That it shall be unlawful for any member of the board of supervisors of any county in this state to knowingly vote, to let any contract to or for the employment by contract or otherwise of any relative of any member of the board of supervisors by blood or marriage, within the third degree for the performance of any work, or for the furnishing of any supplies or material, within the county. However, this act shall not apply to work or labor or the furnishing of supplies or material where the same is let to the lowest responsible bidder on competitive bids.''

The evidence discloses that the contract was let on sealed bids made pursuant to an advertisement therefor and that one or more of these bids was lower than that of J. Y. Dempsey, a son of the appellant to whom the contract was awarded and for whom the appellant voted. The evidence is silent as to the responsibility of any of the bidders for the performance of the contract and also as to their willingness and ability to execute a bond there-

for.  The appellant's request for a peremptory instruction was refused.

The statute expressly provides that it shall not apply to contracts awarded on competitive bids "to the lowest responsible bidder."  The contention of the state is that the responsible bidder here meant is one who can and will execute a proper bond for the performance of the contract.  The contention of the appellant is that a responsible bidder is not only one who can and will give a bond, but who is a competent, efficient, and otherwise suitable person for the discharge of the duties which he will be called on to perform under the contract.  It is not necessary for us to decide between these contentions, for, conceding that of the state to be correct, there is no evidence as hereinbefore pointed out as to the willingness or ability of the various bidders for the contract to execute a bond therefor.

The state having failed to prove, as under the statute it was bound to do, that Dempsey was not the lowest responsible bidder for the contract, the court below should have complied with the appellant's request to direct the jury to find him not guilty.

The judgment of the court below will be reversed and the appellant discharged.

*Reversed and the appellant discharged.*